UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LABORERS' INTERNATIONAL
UNION OF NORTH AMERICA
LOCAL NO. 91, A.F.L.-C.I.O., et al.

                        Plaintiffs,
    v.                                         **DECISION AND ORDER**
                                                        05-CV-288S

EMPIRE DISMANTLEMENT
CORPORATION,

                        Defendant.

## I.  INTRODUCTION

In this case, the Laborers International Union Local No. 91 ("Local 91") and trustees of various Local 91 employee benefit funds seek to collect employee benefit contributions allegedly due under Local 91's collective bargaining agreement ("CBA").  Plaintiffs seek relief pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 and 1145.  Currently before this Court is Defendant's Motion to Dismiss or for Summary Judgment on Plaintiffs' second and third causes of action.

## II.  BACKGROUND

**A.      Factual Summary**

Defendant Empire Dismantling Corporation ("Empire") is a demolition company located in Niagara County, New York.  (Compl., ¶ 8).  On or about October 4, 2002, Empire executed a Letter of Assent binding it to a Memorandum of Agreement which in turn bound it to the terms of Local 91's CBA, as well as that of the Ironworkers Union.  (Pl.'s State., ¶ 1; Def.'s State., ¶ 3).  Empire executed the letter as a condition to performing demolition

work at the Niagara Falls Convention Center in connection with the recent construction of the Seneca-Niagara Casino project ("the project"). (Pl.'s State., ¶ 2).

Local 91's CBA provides that it has jurisdiction over "the wrecking of buildings and structures," and numerous other types of work. (CBA, p. 41).[1] According to Empire, the Ironworkers' CBA contains a similar work jurisdiction clause. (Def.'s State., ¶ 4).

In performing demolition work for the project in 2002 and 2003, Empire employed members of various unions, including members of Local 91, and members of the Ironworkers Union. (Pl.'s State., ¶ 3). By letter dated November 26, 2002, Local 91 complained that Empire was assigning work to members of the Ironworkers Union rather than Local 91 in violation of Local 91's CBA, and demanded that Empire assign all work to Local 91. (Def.'s State., ¶¶ 6, 20). Empire contends that Local 91 threatened to bring a claim under the CBA, but never did so during the course of the project. (Def.'s State., ¶ 6).

Empire contends that it paid the benefit funds due to the Ironworkers Union, as well as the wages and benefit fund contributions due to Local 91, after completion of the demolition work. (Def.'s State., ¶ 7). Notwithstanding its position that it had paid Local 91 all of the benefits due, Empire consented to an audit of its payroll books and records after trustees of Local 91 commenced an action against it in April 2003, Bianco, et al. v. Empire Dismantlement Corp., 03-CV-318A(F). (Def.'s State., ¶¶ 8-11). According to Local 91, the audit revealed that Empire had underpaid contributions due. (Pl.'s State., ¶ 11).

**B.    Procedural History**

Plaintiffs commenced this action by filing a Complaint in the United States District

---

[1] The CBA is attached as Exhibit A, Sub-Exhibit B to Defendant's notice of motion/affidavit of Jerome P. Williams.

Court for the Western District of New York on April 28, 2005. On August 22, 2005, after the parties exchanged initial disclosures, Defendant moved to dismiss or in the alternative for summary judgment on Plaintiffs' second and third causes of action.[2] This Court heard oral argument on October 13, 2005, and reserved decision at that time. For the following reasons, Defendant's Motion to Dismiss or for Summary Judgment on Plaintiffs' second and third causes of action is denied.

### III. DISCUSSION

#### A. Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a Complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A court may dismiss an action under this rule if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief." Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)).

When a court decides a motion under Rule 12(b)(6), all well-pleaded factual allegations contained in the Complaint are assumed true and construed in the non-moving party's favor. See Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 1850, 48 L. Ed. 2d 338 (1976); Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996). On such a motion, "[t]he issue is not whether a plaintiff will or might ultimately prevail on [his] claim, but whether [he] is entitled to offer evidence in support of the allegations in the

---

[2] In support of their Motion to Dismiss or for Summary Judgment, Defendant filed a statement of undisputed material facts as required by Rule 56.1(a) of the Local Rules of Civil Procedure for the United States District Court for the Western District of New York, a memorandum of law, the affidavit of Jerome P. Williams with numerous exhibits, and a reply memorandum of law. In opposition to Defendant's Motion, Plaintiffs filed a statement of undisputed material facts, an attorney affidavit by Eric T. Boron and a memorandum of law.

3

complaint." Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 62 (2d Cir. 1997) (citation omitted).

**B.    Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).  A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson, 477 U.S. at 248.  In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

When deciding a motion for summary judgment, a court must view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion." Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  Ultimately, the function of the court is "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**C.     Empire's Motion to Dismiss or For Summary Judgment**

Plaintiffs assert three causes of action in their Complaint.  In their first cause of action, Plaintiffs assert that Empire underpaid contributions to the funds by $390.79, and seek $31,314.80, for unpaid contributions, interest, and liquidated damages.  In their second cause of action, Plaintiffs seek payment of contribution for hours worked by all employees, including members of the Ironworkers Union.  In their third cause of action, Plaintiffs demand payment for the costs of the audit.  Empire moves to dismiss, or in the alternative, for summary judgment on Plaintiffs' second and third causes of action, which this Court will address in turn.

**D.     Contributions for Work Performed By A Competing Union**

**i.     Plaintiffs' Contribution Claim Is Not Barred As A Matter Of Law**

Empire contends that Plaintiffs' contribution claim is barred as a matter of law, because Empire has already paid benefit funds to the Ironworkers Union, whose members actually performed the work.  However, the fact that Empire may be required to make double payments with respect to contributions for work performed by the Ironworkers Union does not preclude Plaintiffs' recovery under 29 U.S.C. § 1145 ("Section 515").  Trustees of the Bricklayers & Allied Craftworkers, Local 5 New York Ret., Welfare, Apprenticeship Training & Journeymen Upgrading & Labor-Mgmt. Coal. Funds v. Plaster Master, Inc., No. 99 Civ. 5194(BDP), 2001 WL 34456771, at *4 (S.D.N.Y. Jan. 9, 2001); see also Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 316 (2d Cir. 1990) (recognizing that the application of Section 515 may result in cases that "may seem quite harsh").  In this case, the requirement that Empire "double pay," if such an obligation exists, arises from Empire's assent to the terms of Local 91 and the Ironworkers Union's respective CBAs, and not from

an inequitable application of Section 515. See Plaster Master, Inc., 2001 WL 34456771, at *4. Accordingly, this Court finds that Plaintiffs' claims are not barred as a matter of law.

### ii. The Trustees Were Not Obligated to Exhaust Grievance Procedures

Empire argues that Plaintiffs' contribution claim must be dismissed because the union did not assert a jurisdictional claim during the project and exhaust the grievance procedures set forth in the CBA. This Court does not agree. As an initial matter, Plaintiffs' claim is, on its face, a claim for contributions.[3] The CBA explicitly provides that "the provisions of the Grievance Procedure shall not apply to the liability of the Employer to make the required contributions to the above named Funds . . . ." (CBA, p. 21). Moreover, Local 91's failure to assert a jurisdictional claim during the project does not constitute a legally sufficient basis to bar the union and its trustees from recovering contributions under Section 515. See Benson, 907 F.2d at 314 (recognizing that there are only two defenses to Section 515: (1) that the contributions themselves are illegal and; (2) that the collective bargaining agreement is void, and not merely voidable).

Nonetheless, a trustee attempting to recover contributions must establish that the employer is required to do so under the relevant collective bargaining agreement. Accordingly, this Court turns to the issue of whether Local 91's CBA obligates Empire to make fund contributions for work completed by a competing union.

---

[3] Empire asserts that Local 91's contribution claim is, in fact, a jurisdictional claim. However, on the record before this Court, genuine issues of material fact exist as to whether Local 91 commenced this case to vindicate a jurisdictional grievance over the assignment of demolition work to the Ironworkers Union. Accordingly, this Court does not find that the two unreported cases from the Sixth Circuit cited by Empire, Tr. of B.A.C. Local 32 Ins. Fund v. Ohio Ceiling & Partition Co., Inc., 48 Fed. Appx. 188, 196, 2002 WL 31245970, at *7 (6th Cir. Oct. 4, 2002) and Tr. for Michigan BAC Health Care Fund v. OCP Contractors, Inc., 136 Fed. Appx. 849, 851 (6th Cir. June 7, 2005), compel dismissal of Local 91's contribution claim.

### iii. The CBA is Ambiguous

Section 515 of ERISA states, in relevant part, that:

> [e]very employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. The Second Circuit has held that "once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." Benson, 907 F.2d at 314.

At the same time, Section 515 only requires contributions in accordance with the terms and conditions of the relevant collective bargaining agreement. See DeVito v. Hempstead China Shop, Inc., 38 F.3d 651, 654 (2d Cir.1994); see also Aeronautical Indus. Dist. Lodge 91 v. United Tech. Corp., 230 F.3d 569, 576 (2d Cir. 2000) (explaining that courts construing labor agreements should apply traditional rules of contract interpretation to the extent consistent with federal labor policies); Carpenters Fringe Benefit Funds of Illinois v. McKenzie Eng'g, 217 F.3d 578, 582 (8th Cir. 2000) ("Under ERISA § 515, the Funds may collect only those contributions that [the employer] is contractually obligated to pay."). Accordingly, this Court must examine Local 91's CBA to determine whether it imposes a duty to "double pay" for work performed by the Ironworkers Union.

It is well-settled that "contract clauses should be interpreted based on their plain and literal meaning so as to avoid interference with the private bargain." NLRB v. United Tech. Corp., 884 F.2d 1569, 1575 (2d Cir. 1989) (internal citations omitted); see also Scotto v. Brink's, Inc., 962 F.2d 225, 226 (2d Cir. 1992) (interpreting the relevant collective

bargaining agreement according to its "clear and unambiguous" terms). "Whether a contract is ambiguous is a question of law." Onondaga County Laborers' Health and Welfare, Pension, Annuity and Training Funds ex rel. Moro v. Geddes Glass & Metal, Inc., No. 01-CV-1330NAMGJD, 2005 WL 3689614, at *3 (N.D.N.Y. Jan. 19, 2005) (citing Haber v. St. Paul Guardian Ins. Co., 137 F.3d 691, 695 (2d Cir.1998)). Contract language that is "reasonably susceptible to more than one reading[,]" is ambiguous. Haber, 137 F.3d at 695. To the extent that a contractual provision is ambiguous, a court may consider extrinsic evidence regarding the parties' intent. DeVito, 38 F.3d at 654. Under such circumstances, however, the meaning of the contract becomes an issue of fact precluding summary judgment. Id.; Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan, 7 F.3d 1091, 1094 (2d Cir.1993).

Local 91's CBA directs that an employer who is a signatory shall pay fund contributions for "employees covered by this Agreement and working in the jurisdiction of this Agreement." (CBA, p. 19). The CBA fails to define the term "employee," and is completely silent on the issue of double paying. It does provide that the "region in which this Agreement is effective includes all of Niagara County, New York," (CBA, p. 4), and states that Local 91 has jurisdiction over the wrecking of buildings and structures, among other work. (CBA, p. 41).

Plaintiffs argue that the CBA clearly requires Empire to pay contributions for non-Local 91 employees who performed wrecking work within the jurisdictional boundaries of Niagara County. (Pl.'s Mem., pp. 5-6). Empire contends that a reasonable interpretation of the CBA is that it only requires an employer to make contributions for work performed by Local 91 employees within the CBA's jurisdiction. (Def.'s Mem., p. 6). Under the

8

circumstances, this Court finds that the phrase "the employees covered by this Agreement" is ambiguous, in that it may be understood to refer either exclusively to employees who are members of Local 91, or alternatively, to any employee performing work within Niagara County, whether or not a member of Local 91. See Blando v. I. & O.A. Slutzky, Inc., 68 N.Y.2d 869, 870-71 (N.Y. 1986). This ambiguity creates a genuine issue of fact which precludes summary judgment on Local 91's contribution claim.[4]

### E. Local 91's Claim for the Costs of the Audit

In its third cause of action, Local 91 seeks payment for the costs of the audit of Empire's books performed in connection with Bianco, et al. v. Empire Dismantlement Corp., 03-CV-318A(F). It is undisputed that Empire agreed to the audit, and that Local 91's CBA provides that an employer who fails to make "the required contributions" to the relevant funds shall pay "C.P.A. costs and other costs incurred . . . for the collection of delinquent accounts." (CBA, p. 21). While the provision of the CBA is clear, this Court finds that a genuine issue of material fact exists as to whether Empire was "required" to make contributions to Local 91 for work performed by a competing union, i.e., the Ironworkers Union. This issue precludes summary judgment on Plaintiffs' audit costs claim.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or for Summary Judgment on Plaintiffs' second and third causes of action is denied.

---

[4] As there has been no discovery in this litigation, other than initial disclosures, there is no extrinsic evidence that this Court may consider regarding whether the parties intended the CBA to require contributions to Local 91 for work performed by competing unions.

## V.  ORDERS

IT HEREBY IS ORDERED that Defendant's Motion to Dismiss or for Summary Judgment (Docket No. 8) is DENIED.

SO ORDERED.

Dated:    March 26, 2006
         Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge
